CLARK S. STONE (SBN 202123)
INCHAN A. KWON (SBN 247614)
MacPHERSON KWOK CHEN & HEID LLP
2033 Gateway Place, Suite 400
San Jose, California 95110
Phone: (408) 392-9250
Facsimile: (408) 392-9262
Email: cstone@macpherson-kwok.com
       ikwon@macpherson-kwok.com

Attorneys for Plaintiff and Counterclaim Defendant
PURICLE, INCORPORATED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PURICLE, INCORPORATED, a California corporation,<br><br>               Plaintiff,<br><br>    v.<br><br>CHURCH & DWIGHT CO., INC., a Delaware corporation,<br><br>               Defendant.<br><hr>AND RELATED COUNTERCLAIMS | Case No. CV 08-03082 ABC (OPx)<br><br>**PURICLE, INCORPORATED'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CHURCH & DWIGHT CO., INC.'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**[Declarations of Elisa Sim and Clark S. Stone; Notice of Lodging of Physical Exhibits Filed Concurrently Herewith]**<br><br>Hearing Date:  July 21, 2008<br>Hearing Time: 10:00 A.M.<br>Location: Courtroom 680,<br>           Roybal Fed. Bldg.<br>Before: Hon. Audrey B. Collins |

# TABLE OF CONTENTS

Page No.

I.   INTRODUCTION .................................................................................1

II.  STATEMENT OF FACTS ...................................................................2

    A.   1999-2005: The Conception, Development, And Sales
        Of Puricle's Successful NeverScrub Product And
        Brand ............................................................................................2

    B.   September 2005: Puricle Enters Into A Manufacturing
        Agreement With Orange Glo For The NeverScrub
        Product .........................................................................................3

    C.   August 2006: Orange Glo Assigns The Manufacturing
        Agreement To C&D ....................................................................4

    D.   February 2007: C&D Slashes Its Orders Of
        NeverScrub Products From Puricle By Almost Half ...............4

    E.   May 2007: C&D Claims Puricle Breached the
        Manufacturing Agreement By Selling To Wal-Mart ...............4

    F.   December 2007: C&D States That It Will Continue
        Purchasing The NeverScrub Product Through
        November 2008 ............................................................................5

    G.   March 2008: C&D Abruptly Terminates The
        Manufacturing Agreement ........................................................6

    H.   June 2008: Puricle Informs Lowe's That It No Longer
        Sells Its NeverScrub Product To The Third-Party
        Vendor .........................................................................................6

    I.   June 2008: C&D Markets And Sells Its Kaboom Scrub
        Free Product Side-By-Side On Store Shelves With The
        Kaboom NeverScrub Product ....................................................7

III. ARGUMENT .......................................................................................8

    A.   C&D Is Not Likely To Succeed On The Merits Of Its
        Claims ..........................................................................................9

        1.   As Restraints Of Trade, The Non-Compete And
            Non-Solicit Provisions Are Void Under
            California Business And Professions Code §
            16600 ..................................................................................9

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PRELIMINARY INJUNCTION --
CASE NO. CV 08-03082 ABC (OPx)

2. The Non-Compete And Non-Solicit Provisions Are Unconscionable And Unenforceable Under California Civil Code § 1670.5 ................................... 12

3. Even If The Non-Compete And Non-Solicit Provisions Were Valid And Enforceable, C&D Is Not Likely To Succeed In Proving That Puricle Breached Them ................................... 15

4. C&D Is Not Likely To Succeed In Proving That Puricle Breached The Implied Covenant Of Good Faith ................................... 17

B. C&D Will Not Suffer Irreparable Harm Absent A Preliminary Injunction ................................... 18

1. C&D's At Least 13-Month Delay In Seeking A Preliminary Injunction Refutes Its Claim Of Irreparable Harm ................................... 18

2. Any Harm From Puricle's Alleged Breach Of Contract Is Compensable In Money Damages ................................... 20

3. C&D's Conclusory Allegations Of Lost Goodwill, Damaged Reputation, And Consumer Confusion Are Insufficient To Establish Irreparable Harm ................................... 21

C. The Balance Of Hardships Overwhelmingly Favors Puricle ................................... 23

D. A Preliminary Injunction Would Disserve The Public Interest ................................... 24

E. Even If C&D Were Entitled To A Prohibitory Injunction, It Would Not Be Entitled To A Mandatory Injunction ................................... 25

IV. CONCLUSION ................................... 25

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION -- CASE NO. CV 08-03082 ABC (OPx)**

# <u>TABLE OF AUTHORITIES</u>

Page No(s).

## Cases

*A & M Produce Co. v. FMC Corp.*,
  135 Cal. App. 3d 473, 186 Cal. Rptr. 114 (Cal. Ct. App. 1982) ...........................13

*Am. Paper & Packaging Prods., Inc. v. Kirgan*,
  183 Cal. App. 3d 1318, 228 Cal. Rptr. 713 (Cal. Ct. App. 1986) ........................12

*Beatty Safway Scaffold, Inc. v. Skrable*,
  180 Cal. App. 2d 650, 4 Cal. Rptr. 543 (Cal. Ct. App. 1960) .................................9

*Bosley Med. Group v. Abramson*,
  161 Cal. App. 3d 284, 207 Cal. Rptr. 477 (Cal. Ct. App. 1984) ..........................10

*Boughton v. Socony Mobil Oil Co.*,
  231 Cal. App. 2d 188, 41 Cal. Rptr. 714 (Cal. Ct. App. 1964) ............................10

*Broadcom Corp. v. Qualcomm Inc.*,
  No. SACV 05-468-JVS(MLGx), 2005 U.S. Dist. LEXIS 45830
  (C.D. Cal. Oct. 19, 2005) ......................................................................................19

*Campbell v. Bd. of Trs.*,
  817 F.2d 499 (9th Cir. 1987)................................................................................10

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
  222 Cal. App. 3d 1371, 272 Cal. Rptr. 387 (Cal. Ct. App. 1990) ........................18

*Circuit City Stores, Inc. v. Mantor*,
  335 F.3d 1101 (9th Cir. 2003)................................................................................13

*Citibank N.A. v. Citytrust*,
  756 F.2d 273 (2d Cir. 1985)..................................................................................19

*Comedy Club, Inc. v. Improv W. Assocs.*,
  Nos. 05-55739, 05-56100, 2008 U.S. App. LEXIS 1258
  (9th Cir. Jan. 23, 2008)...........................................................................................9

*ConWest Res., Inc. v. Playtime Novelties, Inc.*,
  No. C 06-5304 SBA, 2006 U.S. Dist. LEXIS 85461
  (N.D. Cal. Nov. 17, 2006) ......................................................................................20

*Davis v. Advanced Care Techs., Inc.*,
  No. Civ. S-06-2449 RRB DAD, 2007 U.S. Dist. LEXIS 57783
  (E.D. Cal. Aug. 7, 2007) ........................................................................................24

*Fleischman v. Rahmstorf*,
  226 F. 443 (9th Cir. 1915)......................................................................................21

iii

*Gen. Commercial Packaging, Inc. v. TPS Package Eng'g, Inc.*,
126 F.3d 1131 (9th Cir. 1997).................................................................10

*Givemepower Corp. v. Pace Compumetrics, Inc.*,
No. 07cv157WQH(RBB), 2007 U.S. Dist. LEXIS 20886
(S.D. Cal. Mar. 23, 2007).......................................................................21

*Global Horizons, Inc. v. U.S. Dep't of Labor*,
510 F.3d 1054 (9th Cir. 2007)...................................................................8

*Glow Indus., Inc. v. Lopez*,
252 F. Supp. 2d 962 (C.D. Cal. 2002) ..............................................2, 21

*Hologic, Inc. v. SenoRx, Inc.*,
No. C-08-00133 RMW, 2008 U.S. Dist. LEXIS 36693
(N.D. Cal. Apr. 25, 2008).......................................................................23

*Hougue v. City of Holtville*,
No. 07cv2229 WQH (WMc), 2008 U.S. Dist. LEXIS 35258
(S.D. Cal. Apr. 30, 2008) .......................................................................17

*Hunter v. Superior Court*,
36 Cal. App. 2d 100, 97 P.2d 492 (Cal. Ct. App. 1939).......................10

*Ingle v. Circuit City Stores, Inc.*,
328 F.3d 1165 (9th Cir. 2003).................................................................13

*Kelton v. Stravinski*,
138 Cal. App. 4th 941, 41 Cal. Rptr. 3d 877 (Cal. Ct. App. 2006) ........9

*King v. Gerold*,
109 Cal. App. 2d 316,  P.2d 710 (Cal. Ct. App. 1952) .........................10

*Kobell v. Suburban Lines, Inc.*,
731 F.2d 1076 (3d Cir. 1984)..................................................................23

*Latona v. Aetna U.S. Healthcare, Inc.*,
82 F. Supp. 2d 1089 (C.D. Cal. 1999) .....................................................9

*Lydo Enters., Inc. v. City of Las Vegas*,
745 F.2d 1211 (9th Cir. 1984)..................................................................18

*Marcos v. Koreana Plaza Mkt. Oakland, Inc.*,
No. C-06-07682 RMW, 2007 U.S. Dist. LEXIS 46361
(N.D. Cal. June 18, 2007) .......................................................................15

*Mazurek v. Armstrong*,
520 U.S. 968, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997).......................8

iv

*Moonrunners L.P. v. Time Warner Inc.*,
  No. CV 05-1362 GAF (VBKx), 2005 U.S. Dist. LEXIS 41244
  (C.D. Cal. June 17, 2005)..................................................................19

*Moss, Adams & Co. v. Shilling*,
  179 Cal. App. 3d 124, 224 Cal. Rptr. 456 (Cal. Ct. App. 1986) ......................9, 12

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*,
  762 F.2d 1374 (9th Cir. 1985)........................................................18, 21

*Optinrealbig.com, LLC v. Ironport Sys.*,
  323 F. Supp. 2d 1037 (N.D. Cal. 2004) ............................................20

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
  55 F. Supp. 2d 1070 (C.D. Cal. 1999) ..............................................19

*Polimaster Ltd., N.A. v. RAE Sys., Inc.*,
  No. 05-01887-JF, 2005 U.S. Dist. LEXIS 33847
  (N.D. Cal. Sept. 6, 2005)..................................................................20

*Premier Nutrition, Inc. v. Organic Food Bar, Inc.*,
  475 F. Supp. 2d 995 (C.D. Cal. 2007) ..........................................20, 21

*Printers Servs. Co. v. Bondurant*,
  No. CV 91-0916 JSL (Sx), 1991 U.S. Dist. LEXIS 20561
  (C.D. Cal. Apr. 16, 1991)..................................................................22

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
  944 F.2d 597 (9th Cir. 1991)..............................................................21

*Scott v. Snelling & Snelling, Inc.*,
  732 F. Supp. 1034 (N.D. Cal. 1990) ....................................................9

*Shroyer v. New Cingular Wireless Servs.*,
  498 F.3d 976 (9th Cir. 2007)..............................................................13

*Stanley v. Univ. of S. Cal.*,
  13 F.3d 1313 (9th Cir. 1994)..............................................................25

*Stephan B. Haber Constr., Inc. v. M/V Heliya*,
  No. CV 06-173-GHK (Ex), 2007 U.S. Dist. LEXIS 64863
  (C.D. Cal. Mar. 19, 2007) ................................................................16

*Stokley-Van Camp, Inc. v. Coca Cola, Inc.*,
  No. 86 C 6159, 1987 U.S. Dist. LEXIS 781
  (N.D. Ill. Jan. 29, 1987)....................................................................19

*Summerhays v. Scheu*,
  10 Cal. App. 2d 574, 52 P.2d 512 (Cal. Ct. App. 1936)........................10

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PRELIMINARY INJUNCTION --
CASE NO. CV 08-03082 ABC (OPx)**

*Telephia Inc. v. Cuppy*,
   No. C 04-03508 SI, 2005 U.S. Dist. LEXIS 44124
   (N.D. Cal. Mar. 11, 2005) .........................................................................20

*United States v. Marine Shale Processors*,
   81 F.3d 1329 (5th Cir. 1996)...............................................................23, 24

*Windsurfing Int'l v. AMF, Inc.*,
   782 F.2d 995 (Fed. Cir. 1986)..................................................................24

**Statutes**

15 U.S.C. § 1055................................................................................................22

Cal. Bus. & Prof. Code § 16600 ..........................................................9, 10, 11

Cal. Bus. & Prof. Code § 16601 ...................................................................10

Cal. Bus. & Prof. Code § 16602 ...................................................................10

Cal. Civ. Code § 1670.5..................................................................................12

**Rules**

C.D. Cal. Local Civ. R. 7-5 .............................................................................1

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PRELIMINARY INJUNCTION --
CASE NO. CV 08-03082 ABC (OPx)**

Plaintiff, Puricle, Incorporated ("Puricle") hereby opposes the Application of Defendant Church & Dwight Co., Inc. ("Church & Dwight" or "C&D") for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue,[1] which application this Court has construed as a Motion for Preliminary Injunction.

## I.    INTRODUCTION

Since at least May 2007, C&D, a self-proclaimed brand leader with numerous products generating billions of dollars in annual revenue, has set its sights on driving Puricle, a small, family-run business with one product and less than one quarter of one percent of C&D's annual revenue, out of the toilet bowl cleaning market.  C&D once called Puricle's innovative "NeverScrub" product a "gold mine."  Now, C&D wants Puricle to shut down for a year or longer so that C&D can capture all the goodwill generated over the past three years by the parties' jointly marketed "Kaboom NeverScrub" product, which is packaged nearly identically to and sold side-by-side on store shelves with C&D's new "Scrub Free" product.  C&D's attempt to extract more out of Puricle's "gold mine" than the parties bargained for should not be rewarded.

In this latest salvo, C&D seeks emergency relief for Puricle's alleged breach of contract beginning in May 2007.  Admitting that it does not have enough evidence to justify the extraordinary relief of a preliminary injunction, C&D recently sought expedited discovery from Puricle in attempt to establish what Local Rule 7-5 required it to establish when it filed the motion: that it is entitled to preliminary relief.[2]

---

[1] C&D's Application is referred to herein as "Def.'s Mot. for Prelim. Inj."  C&D's Memorandum of Points and Authorities in Support Thereof is referred to herein as "Def.'s Mem."

[2] (*See* Stone Decl. ¶¶ 9-13.)  Local Rule 7-5 requires a movant to submit with its motion "[a] brief but complete memorandum in support thereof and the points and authorities upon which the moving party will rely" and "[t]he evidence upon which the moving party will rely in support of the motion."  *See Glow Indus., Inc. v. Lopez,*

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION -- CASE NO. CV 08-03082 ABC (OPx)**

C&D cannot meet its burden of demonstrating it is entitled to a preliminary injunction. First, the non-compete and non-solicit agreements are void, unconscionable, and unenforceable. Second, even if the agreements were valid and enforceable, C&D cannot establish that Puricle breached them. Third, C&D cannot establish it will suffer irreparable harm because it (a) delayed filing this motion since at least May 2007, (b) alleges nothing more than lost sales, which are compensable in money damages, and (c) makes only vague, unsupported allegations of lost goodwill, damaged reputation, and consumer confusion. Fourth, Puricle would be harmed more (indeed, likely driven out of business) if a preliminary injunction is granted than C&D would be if a preliminary injunction is denied. Finally, the public interest would be disserved by a preliminary injunction.

## II.   STATEMENT OF FACTS

### A.   1999-2005: The Conception, Development, And Sales Of Puricle's Successful NeverScrub Product And Brand

Puricle is a small, family-run business founded in 2001. Puricle's business consists of the development, manufacture, marketing, and sale of a toilet bowl cleaning product under its trademark NEVER SCRUB (often used as "NeverScrub"). Puricle's founder, Korean immigrant Jae Sim, developed the NeverScrub product in 1999. (Sim Decl. ¶¶ 1-2, 4-6.)

The NeverScrub product is installed in the tank of a conventional flush toilet between the toilet tank water inlet valve and the overflow tube. When the toilet is flushed, water from the toilet's inlet valve passes through the inlet tube into the NeverScrub product, picking up dissolved cleaning and deodorizing agents, and then

---

252 F. Supp. 2d 962, 1005 n.150 (C.D. Cal. 2002) ("Submitting the bulk of one's legal argument and evidence only in reply deprives the opposing party of a fair opportunity to respond, and contravenes the Local Rules. . . . To permit [movant] to supplement the record further at this stage of the proceedings in order to correct deficiencies in the original showing would simply prejudice [opposers] further and reward [movant's] questionable litigation strategy.").

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PRELIMINARY INJUNCTION --
CASE NO. CV 08-03082 ABC (OPx)

1   flows out through the outlet tube into the overflow pipe which goes into the toilet

2   bowl.  (Sim Decl. ¶ 5.)

3       Puricle's NeverScrub product is protected by U.S. Patent Number 6,321,392,

4   which issued November 27, 2001.  Puricle also owns a federal trademark

5   registration for NEVER SCRUB (Reg. No. 2,765,908) for "[t]oilet bowl dispensers

6   for mounting in a toilet tank for dispensing cleaner for the tank bowl and other

7   components of a toilet."  This registration was based on use in commerce since at

8   least June 2000.  (Sim Decl. ¶ 6; Stone Decl. at 7.)

9       Prior to September 26, 2005, Puricle was successful in directly marketing and

10  selling the NeverScrub product to retailers such as Wal-Mart, Home Depot, Ace

11  Hardware, Menards, and Do It Best stores.  (Sim Decl. ¶ 7.)

12      The NeverScrub product is Puricle's only product.  In 2007, approximately

13  94% of Puricle's $4.8 million in revenue was from sales of the NeverScrub product

14  to C&D.  Puricle and its 10 employees rely on the continued success of the

15  NeverScrub product.  Without the ability to market and sell the NeverScrub product,

16  it is likely that Puricle will be forced out of business.  (Sim Decl. ¶¶ 66, 63, 34, 3,

17  67.)

18      **B.    September 2005: Puricle Enters Into A Manufacturing Agreement**
          **With Orange Glo For The NeverScrub Product**
19

20      On September 26, 2005, Puricle and Orange Glo International, Inc. ("Orange

21  Glo"), entered into a written Manufacturing Agreement[3] (the "Manufacturing

22  Agreement") under which Puricle agreed to manufacture and Orange Glo agreed to

23  purchase Puricle's NeverScrub product and associated refills.  These were to be co-

24  branded with Puricle's NEVER SCRUB trademark and Orange Glo's KABOOM

25  trademark, and to be sold by Orange Glo as the "Kaboom NeverScrub System" and

26  "Kaboom NeverScrub System Refill" (collectively, "the Kaboom NeverScrub

27  ─────────────────

28  [3] For the Court's convenience, the Manufacturing Agreement is also attached as
    Exhibit A to the Declaration of Elisa Sim.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
                                                              **MOTION FOR PRELIMINARY INJUNCTION --**
                                                              **CASE NO. CV 08-03082 ABC (OPx)**

Products").  (Sim Decl. ¶¶ 8-9.)  The product packaging was jointly developed by Puricle and Orange Glo.  (Sim Decl. ¶ 14.)

Under the terms of the Manufacturing Agreement, Puricle agreed to cease direct sales of the NeverScrub product to retailers by December 31, 2006, at which time Orange Glo became the exclusive distributor of the NeverScrub product.  (Sim Decl. ¶ 51.)

**C.   August 2006: Orange Glo Assigns The Manufacturing Agreement To C&D**

On or about August 7, 2006, C&D acquired Orange Glo for $325 million.  In connection with this acquisition, Orange Glo assigned the Manufacturing Agreement and all its rights and obligations thereunder to C&D.  Shortly after assuming the Manufacturing Agreement, C&D told Puricle that the NeverScrub product was a "gold mine" to C&D.  (Sim Decl. ¶¶ 17, 20.)

**D.   February 2007: C&D Slashes Its Orders Of NeverScrub Products From Puricle By Almost Half**

In February 2007, after C&D assumed Orange Glo's rights and obligations under the Manufacturing Agreement, C&D began to slash its orders from Puricle for the Kaboom NeverScrub Products.  C&D's orders plummeted from a high of $500,000 to $600,000 per month to about $300,000 per month.  This was apparently due to C&D's failure to properly promote and market the Kaboom NeverScrub Products to retailers, which caused declining sales of the Kaboom NeverScrub Products.  (Sim Decl. ¶¶ 24-29.)

**E.   May 2007: C&D Claims Puricle Breached the Manufacturing Agreement By Selling To Wal-Mart**

In a letter dated May 30, 2007, C&D demanded that Puricle discontinue sales of its NeverScrub product to Wal-Mart and on Puricle's website.  The Manufacturing Agreement permitted Puricle to sell its NeverScrub product to Wal-Mart through December 31, 2006.  While Puricle made limited sales to Wal-Mart

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PRELIMINARY INJUNCTION --
CASE NO. CV 08-03082 ABC (OPx)

1   and online shortly after this date, such sales were inadvertent and not intended to

2   interfere with C&D's rights under the Manufacturing Agreement.   Puricle had

3   simply overlooked this requirement of the Manufacturing Agreement until C&D

4   brought it to Puricle's attention on May 30, 2007.  Shortly after C&D asked Puricle

5   to discontinue sales to Wal-Mart and on Puricle's website, Puricle in fact

6   discontinued such sales.  Beyond these limited sales to Wal-Mart and online, Puricle

7   has not sold its NeverScrub product directly to any entity other than Orange Glo or

8   C&D since December 31, 2006.  (Sim Decl. ¶¶ 10, 30-33, 52.)

9
10   **F.   December 2007: C&D States That It Will Continue Purchasing The NeverScrub Product Through November 2008**

11   When C&D began working with Puricle, C&D asked Puricle to agree to and

12   follow a set of procedures for working together, which they referred to as their

13   "business process for turnkey suppliers."   Under this process C&D would issue a

14   written "production plan" to Puricle every month that included a "firm" quantity of

15   the NeverScrub product that C&D would purchase in the next four weeks, a

16   "tentative" quantity to be purchased in the next eight weeks, and a "rolling" quantity

17   to be purchased in the next twelve months.  (Sim Decl. ¶ 18.)

18   As a small family-run business, C&D's forecasts and production plans were

19   critical to Puricle's business planning.  In good-faith reliance on C&D's forecasts

20   and production plans and at significant cost and expense, Puricle routinely

21   purchased raw materials and engaged labor for the purpose of specially

22   manufacturing the Kaboom NeverScrub Products for C&D.  (Sim Decl. ¶ 18.)

23   The last production plan received by Puricle from C&D was on December 12,

24   2007.   That plan provided a forecast through November 24, 2008 with monthly

25   purchases of approximately $238,800, far less than the $9 million in annual sales

26   Puricle expected to realize by entering into the Manufacturing Agreement.   In

27   reliance on C&D's forecast and the course of dealings between the parties, Puricle

28

5

committed its limited resources to supplying C&D with its forecasted demand.  (Sim Decl. ¶¶ 39, 46.)

### G.    March 2008: C&D Abruptly Terminates The Manufacturing Agreement

By letter dated March 24, 2008, C&D abruptly terminated the Manufacturing Agreement, effective September 25, 2008 (i.e., through the initial term of the agreement).  C&D last purchased Kaboom NeverScrub Products from Puricle on or around March 15, 2008.  C&D's delayed termination appears to have been calculated to deprive Puricle of any opportunity to continue selling its NeverScrub product.  (Sim Decl. ¶¶ 41, 42, 46, 48.)

C&D failed to honor its commitments to order the units of the NeverScrub product that it said it would in December 2007.  C&D's failure resulted in Puricle incurring at least $275,932 in costs and losing hundreds of thousands of dollars in profits.  Puricle's abrupt cessation of production also caused Puricle to lay off dozens of employees.  (Sim Decl. ¶¶ 45-46.)

### H.    June 2008: Puricle Informs Lowe's That It No Longer Sells Its NeverScrub Product To The Third-Party Vendor

On or around June 16, 2008, in an effort to mitigate the harm caused by C&D's abrupt termination of the Manufacturing Agreement and discontinued purchase orders, Puricle notified Lowe's that Puricle was no longer selling its NeverScrub product to the third-party vendor that had previously sold it to Lowe's.[4] Puricle did not name C&D in its communication to Lowe's or suggest in any way

---

[4] Note that the email chain Mr. Kreszl submitted as Exhibit A to his declaration makes it appear that Puricle's Elisa Sim first communicated to Lowe's on June 23, 2008.  (*See* Kreszl Decl. at 61.)  But in fact Ms. Sim had first communicated to Lowe's on or around June 16, 2008, approximately a week earlier.  The June 23, 2008 (9:14 a.m.) email attached to Mr. Kreszl's declaration is actually a Lowe's internal communication which copies Ms. Sim's first communication from on or around June 16, 2008.  (Sim Decl. ¶ 48; Kreszl Decl. at 61.)

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PRELIMINARY INJUNCTION --
CASE NO. CV 08-03082 ABC (OPx)

1    that Lowe's should discontinue or alter its business relationship with C&D.  In fact,

2    when Puricle first contacted Lowe's, Puricle was not even aware that C&D was

3    marketing its competing Scrub Free product to Lowe's as an "improved" version of

4    the NeverScrub.  C&D's June 24, 2008 email suggests that C&D's new product is

5    essentially the same as the product that Puricle had sold to C&D (which is protected

6    under Puricle's patent) and that had been marketed and sold under both Puricle's

7    NEVERSCRUB trademark and C&D's KABOOM trademark.  (Sim Decl. ¶¶ 48,

8    58; Kreszl Decl. at 57-61.)

9    **I.    June 2008: C&D Markets And Sells Its Kaboom Scrub Free
         Product Side-By-Side On Store Shelves With The Kaboom**

10       **NeverScrub Product**

11       On June 23, 2008, Puricle discovered that C&D is selling a toilet bowl

12   cleaning product under the name "Kaboom Scrub Free".  That product is very

13   similar to the Kaboom NeverScrub product and is sold in packaging that is nearly

14   indistinguishable[5] to that of the Kaboom NeverScrub product.  The Kaboom Scrub

15   Free product is being sold side-by-side on store shelves with the Kaboom

16   NeverScrub product.  (Sim Decl. ¶¶ 58-61.)

17       Until Puricle discovered C&D's nearly identical product, Puricle had no way

18   of knowing that this was probably the real reason for C&D's declining purchase

19   orders and abrupt termination of the Manufacturing Agreement.  Given C&D's

20   introduction of its almost identical Scrub Free product within one month[6] of

21   terminating the Manufacturing Agreement and its recent application to register the

22   trademark SCRUB FREE! (U.S. Serial No. 77/336,877) while under contract with

23   Puricle (Stone Decl. ¶ 6), Puricle believes C&D wrongfully used Puricle's

24   confidential business information in order to develop its nearly identical Scrub Free

25   product.  C&D's Motion for Preliminary Injunction is the final step in C&D's

26   _____

27   [5] From the consumer's perspective, it is completely indistinguishable.

28   [6] C&D states that it began shipping its Scrub Free product on or about April 14,
     2008.  (Def.'s Mem. at 6.)

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PRELIMINARY INJUNCTION --
CASE NO. CV 08-03082 ABC (OPx)

1 plan—set in motion more than a year ago—to monopolize the automatic toilet bowl

2 cleaning market by forcing Puricle out of business.

3 **III.   ARGUMENT**

4      On a motion for preliminary injunction movant bears the burden of proving:

5 (1) a strong likelihood of success on the merits; (2) the possibility movant will suffer

6 irreparable injury if preliminary relief is not granted; (3) the balance of hardships

7 favors movant; and (4) advancement of the public interest (in certain cases). *Global*

8 *Horizons, Inc. v. U.S. Dep't of Labor*, 510 F.3d 1054, 1057 (9th Cir. 2007) (citation

9 omitted). "Alternatively, a court may issue a preliminary injunction if the moving

10 party demonstrates either a combination of probable success on the merits and the

11 possibility of irreparable injury or that serious questions are raised and the balance

12 of hardships tips sharply in his favor." *Id.* (citation omitted). "[T]he relationship

13 between success on the merits and irreparable harm" is "a sliding scale in which the

14 required degree of irreparable harm increases as the probability of success

15 decreases." *Id.* at 1057-58 (citation omitted). "To reach this sliding scale analysis,

16 however, a moving party must, at an 'irreducible minimum,' demonstrate some

17 chance of success on the merits." *Id.* at 1058 (citation omitted). "When . . . a party

18 has not shown any chance of success on the merits, no further determination of

19 irreparable harm or balancing of hardships is necessary." *Id.* "[A] preliminary

20 injunction is an extraordinary and drastic remedy, one that should not be granted

21 unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek*

22 *v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997)

23 (citation omitted).

24      C&D cannot demonstrate: (1) a strong likelihood of success on the merits; (2)

25 the possibility it will suffer irreparable injury in the absence of a preliminary

26 injunction; (3) the balance of hardships favors C&D; or (4) a preliminary injunction

27 would serve the public interest. As a result, its Motion for Preliminary Injunction

28 should be denied.

**A.     C&D Is Not Likely To Succeed On The Merits Of Its Claims**

      1.     **As Restraints Of Trade, The Non-Compete And Non-Solicit Provisions Are Void Under California Business And Professions Code § 16600**

California law prohibits restraints of trade.   C&D alleges that the Manufacturing Agreement broadly restricts Puricle from competing with C&D by making, marketing, or selling *any* toilet bowl cleaning product anywhere in the world.   Such a broad restriction is void and unenforceable, and thus C&D is not likely to succeed on its claim that Puricle has breached the non-compete and non-solicit provisions of the Manufacturing Agreement.

Under section 16600 of the California Business and Professions Code ("Section 16600"), "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."   While violations of this statute typically arise in the context of employment agreements, the statute is equally applicable to non-compete provisions in manufacturing and other agreements.   *See Beatty Safway Scaffold, Inc. v. Skrable*, 180 Cal. App. 2d 650, 656, 4 Cal. Rptr. 543 (Cal. Ct. App. 1960) (finding that a non-compete provision in an exclusive distribution agreement was void under Section 16600); *see also Scott v. Snelling & Snelling*, *Inc.*, 732 F. Supp. 1034, 1040-42 (N.D. Cal. 1990) (finding a non-compete provision in a franchise agreement void under Section 16600).   "Non-solicitation agreements are [also] subject to the restrictions of section 16600."   *Latona v. Aetna U.S. Healthcare, Inc.*, 82 F. Supp. 2d 1089, 1095 (C.D. Cal. 1999) (citing *Moss, Adams & Co. v. Shilling*, 179 Cal. App. 3d 124, 130, 224 Cal. Rptr. 456 (Cal. Ct. App. 1986)).   The prohibition applies to both in-term and post-term covenants.   *Comedy Club, Inc. v. Improv W. Assocs.*, Nos. 05-55739, 05-56100, 2008 U.S. App. LEXIS 1258, at *28-33 (9th Cir. Jan. 23, 2008); *Kelton v. Stravinski*, 138 Cal. App. 4th 941, 948, 41 Cal. Rptr. 3d 877 (Cal. Ct. App. 2006).

Under California law, even "reasonable" restraints on trade are void, unless they meet certain statutory exceptions.[7] *Bosley Med. Group v. Abramson*, 161 Cal. App. 3d 284, 288, 207 Cal. Rptr. 477 (Cal. Ct. App. 1984) (noting that the California legislature rejected the common law rule of reasonableness when it enacted the predecessor to Section 16600). "California courts have defined 'profession, trade or business' narrowly." *Campbell v. Bd. of Trs.*, 817 F.2d 499, 502-03 (9th Cir. 1987) (citing *Summerhays v. Scheu*, 10 Cal. App. 2d 574, 52 P.2d 512 (Cal. Ct. App. 1936), (finding void a restriction that prohibited a party from entering into the orchard heating business anywhere); *Hunter v. Superior Court*, 36 Cal. App. 2d 100, 97 P.2d 492 (Cal. Ct. App. 1939) (finding void a restriction that prohibited a company from making a particular machine (or any similar machine) to manufacture venetian blinds)). Only extremely narrow restrictions of competition have been found not to violate Section 16600. *See, e.g.*, *Gen. Commercial Packaging, Inc. v. TPS Package Eng'g, Inc.*, 126 F.3d 1131 (9th Cir. 1997) (upholding restriction that prohibited subcontractor from soliciting one particular customer of contractor's); *Boughton v. Socony Mobil Oil Co.*, 231 Cal. App. 2d 188, 41 Cal. Rptr. 714 (Cal. Ct. App. 1964) (upholding restriction that prohibited the use of a particular parcel of property for dispensing petroleum products); *King v. Gerold*, 109 Cal. App. 2d 316, 240 P.2d 710 (Cal. Ct. App. 1952) (upholding restriction against manufacturer of various house trailers not to manufacture one particular design and style of trailer). Importantly, and particularly relevant to the facts here, no court construing Section 16600 has upheld a restriction that would exclude a party from an entire market worldwide, as is asserted here.

Under C&D's construction of the Manufacturing Agreement, Puricle is prohibited from "manufacturing, distributing, or selling, **any toilet bowl cleaning**

---

[7] These statutory exceptions, which are not relevant here, are found in California Business and Professions Code §§ 16601 (relating to the sale of the goodwill of a business) and 16602 (relating to dissolution of a partnership).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PRELIMINARY INJUNCTION --
CASE NO. CV 08-03082 ABC (OPx)

1   **products**, including its NeverScrub product, [presumably, anywhere in the world]

2   during the term of the parties' Manufacturing Agreement, including six months

3   following the agreement's termination or expiration" or "from soliciting or inducing

4   any customer . . . of Church & Dwight to discontinue its relationship or reduce the

5   amount of business done with Church & Dwight."  (Def.'s Mem. at 10 (emphasis

6   added).)  Such broad prohibitions would preclude Puricle from conducting the only

7   business that it has ever conducted and would force it out of business.[8]  As a result,

8   the non-compete and non-solicit provisions in the Manufacturing Agreement violate

9   Section 16600 and are thus void and unenforceable.[9]

10      C&D argues that "Puricle has expressly acknowledged that these covenants

11   against competition are reasonable and necessary to protect Church & Dwight's

12   confidential information and its substantial investment in the KABOOM Products."

13   (Def.'s Mem. at 10.)  In support of this statement, C&D cites provisions of the

14   Manufacturing Agreement that state that Puricle will not use Orange Glo's technical

15   or confidential information.  (*Id.* (citing sections 5.2, 5.4, 5.7, and 5.8 of the

16   Manufacturing Agreement).)

17      Courts have held that the protection of trade secrets or confidential

18   information and prevention of unfair competition are exceptions to Section 16600's

19   prohibition on restraints of trade.  *See, e.g.*, *Am. Paper & Packaging Prods., Inc. v.*

20

21   [8] Not only does C&D seek to preclude Puricle from selling the NeverScrub to any

22   other company, but C&D has also stated it does not intend to order any more
     NeverScrub products from Puricle through the Manufacturing Agreement's

23   September 25, 2008 termination date.  If a preliminary injunction is granted,
     Puricle's business will essentially be forced to a standstill for one year, until March

24   25, 2009, and Puricle's ability to continue operating will be put in jeopardy.

25   [9] C&D may argue that under section 5.10 of the Manufacturing Agreement (which

26   explicitly recognizes the possible invalidity and unenforceability of the non-compete
     and non-solicit provisions) the Court may modify the non-compete and non-solicit

27   provisions in order to make them enforceable.  Puricle is not aware of any authority
     that would allow provisions found void under Section 16600 to be modified by a

28   court, particularly on a motion for preliminary injunction.

11   **PLAINTIFF'S OPPOSITION TO DEFENDANT'S
     MOTION FOR PRELIMINARY INJUNCTION --
     CASE NO. CV 08-03082 ABC (OPx)**

1  *Kirgan*, 183 Cal. App. 3d 1318, 1322, 228 Cal. Rptr. 713 (Cal. Ct. App. 1986)

2  (citation omitted); *Moss, Adams & Co*, 179 Cal. App. 3d at 130.  However, beyond

3  its conclusory allegation that Puricle acknowledged that the non-compete and non-

4  solicit provisions are necessary to protect C&D's confidential information (Def.'s

5  Mem. at 10), C&D does not allege that Puricle misappropriated C&D's trade secrets

6  or unfairly competed with C&D.  This is because Puricle's manufacture, marketing,

7  and/or sale of its own patented NeverScrub product does not involve any technical

8  or confidential information of C&D and does not constitute unfair competition.  (*See*

9  Sim Decl. ¶¶ 22-23, 28 (stating that while Puricle provided confidential business

10  information to C&D, C&D never shared sales or marketing plans with Puricle).)

11      To the extent C&D argues that the fact that Lowe's is a customer of C&D is a

12  trade secret, that argument is belied by the facts.  It is public knowledge that Lowe's

13  has sold many companies' toilet bowl cleaning products, including the Kaboom

14  NeverScrub Products.  Moreover, C&D stated in the public documents it filed in

15  connection with its Motion for Preliminary Injunction that Lowe's is its customer.

16  (*See, e.g.*, Def.'s Mem. at 8.)  Thus, the fact that Lowe's is C&D's customer is not

17  confidential or a trade secret.

18  **2.    The Non-Compete And Non-Solicit Provisions Are**
    **Unconscionable And Unenforceable Under California Civil**
19  **Code § 1670.5**

20      Even if the non-compete and non-solicit provisions were not void as restraints

21  of trade, they are unconscionable under section 1670.5 of the California Civil Code

22  ("Section 1670.5") and are thus unenforceable.

23      Section 1670.5 provides:

24      If the court as a matter of law finds the contract or any clause of the
    contract to have been unconscionable at the time it was made the court
25      may refuse to enforce the contract, or it may enforce the remainder of
    the contract without the unconscionable clause, or it may so limit the
26      application of any unconscionable clause as to avoid any
    unconscionable result.

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
                            **MOTION FOR PRELIMINARY INJUNCTION --**
                            **CASE NO. CV 08-03082 ABC (OPx)**

"Unconscionability exists when one party lacks meaningful choice in entering a contract or negotiating its terms and the terms are unreasonably favorable to the other party." *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1105 (9th Cir. 2003) (citations omitted). Unconscionability has both a substantive and procedural element. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (citations omitted). "California courts apply a 'sliding scale,' so that 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976, 981-82 (9th Cir. 2007) (citation omitted).

"[A] contractual term is substantively suspect if it reallocates the risks of the bargain in an objectively unreasonable or unexpected manner." *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 487, 186 Cal. Rptr. 114 (Cal. Ct. App. 1982). The procedural element focuses on oppression and surprise. *Id.* at 121. "'Oppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.'" *Id.* at 122 (citations omitted). "'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.*

The non-compete and non-solicit provisions in the Manufacturing Agreement are substantively unconscionable. By allocating all risk under the Manufacturing Agreement to Puricle, the non-solicit and non-compete provisions are objectively unreasonable. Under the terms of the contract, Orange Glo could arguably order what it wanted when it wanted[10] and, as C&D is attempting to accomplish through

---

[10] Under section 1.1 of the Manufacturing Agreement, Orange Glo agreed to purchase from Puricle "such products as Orange Glo may order hereunder from time to time." (*See also* Sim Decl. at 68 (C&D stating that the Manufacturing Agreement does not obligate C&D to order "any particular quantity of Products from Puricle.").)

1   its Motion for Preliminary Injunction, could bring Puricle's entire business to a
2   standstill for as long as it wanted (but at least a year) by enforcing its construction of
3   the non-compete and non-solicit provisions[11].  This one-sided allocation of risk was
4   not expected by Puricle at the time it entered into the Manufacturing Agreement.
5   (Sim Decl. ¶ 13.)  Puricle could not have expected that Orange Glo or its assignee
6   would develop a competing product with nearly identical packaging—which was
7   clearly intended to capture the goodwill of Puricle's NEVERSCRUB trademark and
8   patented toilet bowl cleaning product—abruptly stop ordering Puricle's NeverScrub
9   product, then prevent Puricle from even selling off inventory of its NeverScrub
10  product (in dissimilar packaging), which was manufactured in reasonable reliance on
11  continued orders of the NeverScrub product through the contract expiration.  (*See id.*
12  ¶¶ 13, 18, 46.)

13       The non-compete and non-solicit provisions in the Manufacturing Agreement
14  are also procedurally unconscionable.  These oppressive provisions were the result
15  of Puricle's unequal bargaining power when it entered into the contract with Orange
16  Glo.  Around the time the parties entered into the contract, Orange Glo generated
17  annual revenue of almost $200 million through sales of multiple leading products.
18  (Sim Decl. ¶ 11; *id.* at 37.)  C&D purchased Orange Glo for $325 million in 2006.
19  (*Id.*)  By contrast, around the time the parties entered into the contract, Puricle
20  generated less than $1 million in annual revenue and had brought only one product
21  to market—its NeverScrub product.  (*Id.* ¶¶ 11, 66.)  In addition, Jae Sim, who

---

[11] Under section 6.2 of the Manufacturing Agreement, Orange Glo agreed to give
Puricle at least 180 days' notice of termination of the Agreement.  C&D argues that
under section 5.7 of the Manufacturing Agreement, Puricle may not compete with
C&D in the toilet bowl cleaning market or solicit any of C&D's customers for six
months following termination of the Manufacturing Agreement.  On or about March
24, 2008, C&D terminated the Manufacturing Agreement, effective September 25,
2008.  (Sim Decl. ¶ 42.)  C&D has not purchased any of the NeverScrub product
from Puricle since about March 15, 2008.  (*Id.* ¶ 46.)  If the non-compete and non-
solicit provisions are preliminarily enforced, Puricle's business will be brought to a
standstill for more than a year pending a full trial on the merits, and Puricle will
likely be forced out of business.  (*Id.* ¶ 67.)

14                          PLAINTIFF'S OPPOSITION TO DEFENDANT'S
                            MOTION FOR PRELIMINARY INJUNCTION --
                            CASE NO. CV 08-03082 ABC (OPx)

signed the Manufacturing Agreement on behalf of Puricle, has limited understanding of the English language.  (*Id.* ¶ 12.)  As a result, there was a substantial risk that he did not understand what he was signing.  *See Marcos v. Koreana Plaza Mkt. Oakland, Inc.*, No. C-06-07682 RMW, 2007 U.S. Dist. LEXIS 46361, at * 9 (N.D. Cal. June 18, 2007) (finding agreement procedurally unconscionable where parties' "understanding of English is at best limited" because "there is substantial risk that [they] did not understand what it was they were signing").  Moreover, as Orange Glo drafted the Manufacturing Agreement, Puricle was not in a position to understand that Orange Glo or its assignee may ultimately choose to develop a competing toilet bowl cleaning product with nearly identical packaging, stop purchasing Puricle's NeverScrub product, and prevent Puricle from carrying on its business for more than a year, thereby forcing Puricle out of business.  (*See id.* ¶¶ 12, 13.)

Thus, because the non-compete and non-solicit provisions are substantively and procedurally unconscionable, they should not be enforced.

### 3. Even If The Non-Compete And Non-Solicit Provisions Were Valid And Enforceable, C&D Is Not Likely To Succeed In Proving That Puricle Breached Them

C&D alleges that Puricle has breached the non-compete and non-solicit provisions in the Manufacturing Agreement by (1) "manufacturing, marketing, and selling its NeverScrub products at various retail locations,[12] including at Wal-Mart retail locations"; (2) marketing and selling the NeverScrub product on Puricle's website; and (3) contacting "at least one of Church & Dwight's retail distributors [i.e., Lowe's] in an attempt to persuade it to carry Puricle's NeverScrub! products in

---

[12] Besides Wal-Mart and Lowe's, C&D does not identify any other "various" retailers.  Thus, it appears C&D's breach of contract claims are based only on Puricle's alleged sales to Wal-Mart (which C&D alleged it discovered in May 2007), marketing of the NeverScrub product on Puricle's website (which C&D also alleged it discovered in May 2007), and Puricle's alleged soliciting of Lowe's business (through the June 16, 2008 and related communications from Puricle's Elisa Sim to Lowe's).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PRELIMINARY INJUNCTION --
CASE NO. CV 08-03082 ABC (OPx)

place of Church & Dwight's KABOOM Products." (Allen Decl. ¶¶ 11, 13; *see also* Def.'s Mem. at 10.) Even if the non-compete and non-solicit provisions were valid and enforceable, C&D will likely not succeed in proving that Puricle breached them.

Under California law, the elements of a claim for breach of contract are (1) the existence of a contract; (2) performance or excuse for nonperformance by the party asserting the breach; (3) the other party's breach; and (4) injury therefrom to the party asserting the breach. *Stephan B. Haber Constr., Inc. v. M/V Heliya*, No. CV 06-173-GHK (Ex), 2007 U.S. Dist. LEXIS 64863, at \*5 (C.D. Cal. Mar. 19, 2007) (citation omitted). C&D's claims for breach of contract will fail for at least the following reasons.

First, C&D cannot establish that it performed or was excused from performing under the Manufacturing Agreement and related agreements.[13] While not necessarily explicit in the Manufacturing Agreement, the parties understood at the time of entering into the Manufacturing Agreement that Orange Glo or its assignee would continue to purchase the NeverScrub product from Puricle through at least September 26, 2008 (the expiration of the agreement's initial three-year term). Moreover, in the Manufacturing Agreement Orange Glo acknowledged Puricle's intellectual property rights in its NEVER SCRUB trademark and patented toilet bowl cleaning product.[14] But C&D is now attempting to trade off Puricle's goodwill by selling its competing Kaboom Scrub Free product with packaging that

---

[13] Note that while C&D has alleged Puricle breached only the Manufacturing Agreement, Puricle has alleged that C&D breached the Manufacturing Agreement and several related agreements, including, but not necessarily limited to, the parties' Vendor Compliance Business Process agreement, Mutual Confidentiality Agreement, and course of dealing. (*See* Stone Decl. at 20-21.) These subsequent agreements limit or further define C&D's rights and obligations under the Manufacturing Agreement.

[14] (*See* Sim Decl. at 16 (defining "Manufacturer Trademarks"), 36 (listing "Manufacturer Trademarks"), 32 (defining "Technical Information" to include Puricle's patents and trademarks), 23 (§ 5.3(b)), 24 (§ 5.5) (stating Orange Glo will not infringe, *inter alia*, Puricle's patents or trademarks), 25 (§ 5.9(a)).)

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PRELIMINARY INJUNCTION --
CASE NO. CV 08-03082 ABC (OPx)

1   is nearly indistinguishable from the parties' co-branded Kaboom NeverScrub
2   product side-by-side on store shelves.  Under these circumstances, C&D is not likely
3   to be able to prove it has performed or was excused from performing under the
4   Manufacturing Agreement and related agreements.[15]   At a minimum, these facts
5   demonstrate that Puricle should be entitled to full discovery on C&D's breaches of
6   the Manufacturing Agreement and violations of Puricle's intellectual property
7   before the Court orders the extraordinary relief of a preliminary injunction.

8        Second, C&D cannot establish that Puricle's June communications to Lowe's
9   solicited or induced Lowe's "to discontinue its relationship or reduce the amount of
10  business done with [C&D]."  In those communications, Ms. Sim simply stated the
11  undisputed facts that (1) Puricle manufactures the NeverScrub product; (2) Puricle
12  no longer sells the product to the party marketing it as "Kaboom NeverScrub"; and
13  (3) Puricle's NeverScrub product could be supplied directly from Puricle.  Nothing
14  in those communications asks Lowe's to discontinue its relationship with C&D or to
15  reduce the amount of business done with C&D.  In fact, at the time Puricle first
16  contacted Lowe's, Puricle was not aware that C&D was marketing and selling a
17  competing Kaboom Scrub Free product.  (Sim Decl. ¶¶ 48, 58.)

18
19   **4.    C&D Is Not Likely To Succeed In Proving That Puricle Breached The Implied Covenant Of Good Faith**

20        "In California, every contract contains an implied covenant that imposes on
21  each party a 'duty of good faith and fair dealing in each [party's] performance and
22  its enforcement.'"  *Hougue v. City of Holtville*, No. 07cv2229 WQH (WMc), 2008
23  U.S. Dist. LEXIS 35258, at *9 (S.D. Cal. Apr. 30, 2008) (citation omitted).  "A
24  breach of implied covenant of good faith and fair dealing involves something
25  beyond breach of the contractual duty itself."  *Id.* (quoting *Careau & Co. v. Sec.*
26  *Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1393, 272 Cal. Rptr. 387 (Cal. Ct.

27
28   [15] *See supra* note 13.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PRELIMINARY INJUNCTION --
CASE NO. CV 08-03082 ABC (OPx)

App. 1990)).  "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as 'superfluous' as no additional claim is actually stated."  *Id.* (quoting *Careau & Co.*, 222 Cal. App. 3d at 1394-95).

Here, C&D only once refers in its moving papers to Puricle's alleged breach of the covenant of good faith and fair dealing.  Specifically, C&D states:

> Puricle is in breach of the plain terms of the Manufacturing Agreement, and its implied covenant of good faith and fair dealing, each of which prohibit Puricle from competing against Church & Dwight and each of which prohibit Puricle from inducing Church & Dwight's customers to discontinue their business with Church & Dwight.

(Def.'s Mem. at 10.)  Because C&D's claim of breach of the implied covenant of good faith and fair dealing is a carbon copy of C&D's breach of contract claim, it is not likely to succeed.  At a minimum, C&D has failed to put forth evidence sufficient to establish it is likely to succeed on this claim.

### B.   C&D Will Not Suffer Irreparable Harm Absent A  Preliminary Injunction

#### 1.   C&D's At Least 13-Month Delay In Seeking A Preliminary Injunction Refutes Its Claim Of Irreparable Harm

A movant's "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."  *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).  "A preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the [movant's] rights.  By sleeping on its rights a [movant] demonstrates the lack of need for speedy action . . . ."  *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (citations omitted).

Here, C&D argues that if "Puricle breaches any of [the non-compete or non-solicit] provisions, the Manufacturing Agreement entitles Church & Dwight to **immediate** injunctive relief."  (Def.'s Mem. at 7 (emphasis added).)  C&D then

18

admits it knew of Puricle's alleged breach of the Manufacturing Agreement in May 2007, but fails to explain why it waited until the end of June 2008 to seek "immediate" injunctive relief.  (*Id.* at 8.)   This at least 13-month delay refutes C&D's claim of irreparable harm.   Courts have found that substantially shorter delays demonstrated lack of irreparable harm.   *See, e.g.*, *Broadcom Corp. v. Qualcomm Inc.*, No. SACV 05-468-JVS(MLGx), 2005 U.S. Dist. LEXIS 45830, at *11-12 (C.D. Cal. Oct. 19, 2005) (three-month delay);   *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 55 F. Supp. 2d 1070, 1090 (C.D. Cal. 1999), *aff'd*, 202 F.3d 278 (9th Cir. 1999) (five-month delay);   *Citibank N.A. v. Citytrust*, 756 F.2d 273 (2d Cir. 1985) (ten-week delay);   *Stokley-Van Camp, Inc. v. Coca Cola, Inc.*, No. 86 C 6159, 1987 U.S. Dist. LEXIS 781, at *7 (N.D. Ill. Jan. 29, 1987) (three-month delay).

In some cases, a party's good faith settlement efforts may justify a short delay in seeking preliminary relief.   *See Moonrunners L.P. v. Time Warner Inc.*, No. CV 05-1362 GAF (VBKx), 2005 U.S. Dist. LEXIS 41244, at *41-42 (C.D. Cal. June 17, 2005) (finding two-month delay justified where "the parties were discussing settlement and had agreed on a District Judge to conduct settlement negotiations").   There is no such justification here.

C&D never made any attempt to settle this dispute with Puricle.  In fact, C&D rebuked every attempt by Puricle to resolve all of C&D's concerns.   C&D first notified Puricle that Puricle was in breach of the Manufacturing Agreement in May 2007.  (Sim Decl. ¶ 30.)  In June 2007, C&D again notified Puricle that it was in breach of the Manufacturing Agreement and explicitly declined Puricle's request for a settlement conference on the subject of Puricle's alleged breach.  (Allen Decl. at 48.)  Then, more than four months later, in December 2007, C&D sent Puricle its "final notice" of Puricle's alleged breach of the Manufacturing Agreement.  (Sim Decl. at 60.)  In this notice, C&D states its intent to seek "immediate" injunctive relief upon termination of the Manufacturing Agreement.  (*Id.* at 61.)  It was not

until more than six months later, in June 2008 (approximately three months after C&D terminated the Manufacturing Agreement) that C&D sent Puricle's counsel another "final notice" of Puricle's alleged breach of the Manufacturing Agreement. (Allen Decl. at 51.)   Shortly thereafter, C&D filed this Motion for Preliminary Injunction.  Thus, C&D cannot justify its 13-month delay in seeking preliminary relief.

### 2.     Any Harm From Puricle's Alleged Breach Of Contract Is Compensable In Money Damages

"An irreparable harm is one that cannot be redressed by a legal or equitable remedy following trial." *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 475 F. Supp. 2d 995, 1007 (C.D. Cal. 2007) (quoting *Optinrealbig.com, LLC v. Ironport Sys.*, 323 F. Supp. 2d. 1037, 1051 (N.D. Cal. 2004)).   "Mere financial injury does not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation." *Id.* (citations omitted).  "[A] claim for breach of contract can be compensated by money damages, and does not warrant the issuance of a preliminary injunction." *Telephia Inc. v. Cuppy*, No. C 04-03508 SI, 2005 U.S. Dist. LEXIS 44124, at *9 (N.D. Cal. Mar. 11, 2005). *See also ConWest Res., Inc. v. Playtime Novelties, Inc.*, No. C 06-5304 SBA, 2006 U.S. Dist. LEXIS 85461, at *22-23 (N.D. Cal. Nov. 17, 2006) (refusing to grant a preliminary injunction on a breach of contract claim because a breach of contract is compensable in money damages); *Polimaster Ltd., N.A. v. RAE Sys., Inc.*, No. 05-01887-JF, 2005 U.S. Dist. LEXIS 33847, at *17 (N.D. Cal. Sept. 6, 2005) (finding no irreparable harm where injury from alleged breach of contract was compensable in money damages).

C&D's claims against Puricle are based exclusively on Puricle's alleged breach of contract.  Specifically, C&D alleges that Puricle breached a contract by manufacturing, marketing, and selling a competing product and by soliciting C&D's customer.  C&D's allegations amount to nothing more than lost sales.  In fact, C&D has stated repeatedly in its letters to Puricle that Puricle's actions are causing C&D

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION -- CASE NO. CV 08-03082 ABC (OPx)**

to lose sales.  (*See* Allen Decl. at 48, 49, 51.)   Such alleged lost sales are compensable in money damages, and cannot serve as the basis for establishing irreparable harm.

### 3. C&D's Conclusory Allegations Of Lost Goodwill, Damaged Reputation, And Consumer Confusion Are Insufficient To Establish Irreparable Harm

"In some instances, damage to reputation or goodwill, because it is difficult to calculate, qualifies as irreparable harm." *Premier Nutrition, Inc.*, 475 F. Supp. 2d at 1007 (citing *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)).  However, conclusory allegations of lost goodwill or damage to reputation are insufficient to demonstrate irreparable harm.[16]   *Oakland Tribune, Inc.*, 762 F.2d at 1377; *Premier Nutrition, Inc.*, 475 F. Supp. 2d at 1007; *Glow Indus., Inc*, 252 F. Supp. 2d at 1004-1005; *Givemepower Corp. v. Pace Compumetrics, Inc.*, No. 07cv157WQH(RBB), 2007 U.S. Dist. LEXIS 20886, at *24 (S.D. Cal. Mar. 23, 2007).

Here, C&D states that "Puricle's distribution and marketing of its NeverScrub products has caused (and will continue to cause) consumer confusion with Church & Dwight's KABOOM Products" and "Puricle's attempt to persuade Church &

---

[16] For at least this reason, C&D's reliance on *Rent-A-Center, Inc.*, 944 F.2d at 603, is misplaced.  In that case, the party seeking the preliminary injunction put forth substantial evidence, including through expert testimony, showing that its goodwill was likely to be damaged.  *Id.* at 601.  Also, in that case the non-compete covenant was found to be enforceable under Kansas law, not California law.  *Id.* at 600.  C&D's citation of *Fleischman v. Rahmstorf*, 226 F. 443 (9th Cir. 1915) is also misleading.  That case was an appeal from an Alaska district court involving a non-compete agreement in connection with the sale of a business.  Though it appears California law did not govern the agreement, the court cited a California case where the court stated, "The damage for breach of contract for the purchase of the good will of an established trade or business are so absolutely uncertain that courts have recognized the fullest liberty of parties to fix beforehand the amount of damages in that class of cases."  *Id.* at 445 (citation omitted).  The issue in that case was not whether a party was entitled to an injunction, but rather whether a liquidated damages clause was in fact a penalty.

21

Dwight's Retail Distributors[17] to stop purchasing Church & Dwight's KABOOM Products in favor of Puricle's competing NeverScrub is equally damaging to Church & Dwight's reputation and customer goodwill." (Def.'s Mem. at 11.) But nowhere does C&D put forth evidence that shows how any such alleged sales or soliciting of business by Puricle have in fact caused consumer confusion, damage to C&D's reputation, or lost goodwill. In fact, the email chain with Lowe's shows that Lowe's ultimately deferred to C&D when contacted by Puricle. (*See* Kreszl Decl. at 58.)

In fact, it is *Puricle's* goodwill that will be irreparably lost if a preliminary injunction is granted. C&D owns the goodwill generated by the KABOOM mark. Puricle owns the goodwill generated by the NEVERSCRUB mark and the patented product sold under that mark. *See* 15 U.S.C. § 1055 (goodwill generated by licensee's use of licensed mark inures solely to licensor); *Printers Servs. Co. v. Bondurant*, No. CV 91-0916 JSL (Sx), 1991 U.S. Dist. LEXIS 20561, at *13 (C.D. Cal. Apr. 16, 1991) ("While a trademark . . . can be licensed, such use by licensee inures only to the benefit of the trademark . . . licensor.") (citation omitted). As the Kaboom NeverScrub Products were co-branded, the parties jointly own the goodwill generated by the Kaboom NeverScrub Products. However, by attempting to preliminarily enforce the non-compete and non-solicit provisions and by selling its Kaboom Scrub Free product with nearly indistinguishable packaging side-by-side on store shelves, C&D is attempting to improperly use its Kaboom Scrub Free product to capture all the goodwill generated by the parties' jointly marketed

---

[17] C&D repeatedly uses "Retail Distributors" (defined by C&D as those entities that C&D alleges Puricle has an obligation under section 5.7 of the Manufacturing Agreement not to solicit (Def.'s Mem. at 7)) in a misleading manner. Nowhere in its papers does C&D refer to any alleged attempt by Puricle to solicit any C&D customer other than Lowe's (a single retailer). Similarly, Ms. Allen's declaration misleadingly refers to sales of Puricle's NeverScrub product at "various retail locations" or "various retailers" but then only identifies Wal-Mart (a single retailer). (*See* Allen Decl. ¶¶ 11, 12.)

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PRELIMINARY INJUNCTION --
CASE NO. CV 08-03082 ABC (OPx)

1    Kaboom NeverScrub Products, including the goodwill generated by Puricle's
2    NEVERSCRUB mark and patented toilet bowl cleaning product.

3          **C.     The Balance Of Hardships Overwhelmingly Favors Puricle**

4          There is no question that a preliminary injunction here would be devastating
5    to Puricle.  Approximately 94% of Puricle's $4.8 million in revenue in 2007 was
6    from its sales of the NeverScrub product to C&D.  (Sim Decl. ¶¶ 63, 34.)  The
7    NeverScrub product is Puricle's only product.  (*Id.* ¶ 66.)  Without it, it is likely that
8    Puricle will be forced out of business.  (*Id.* ¶ 67.)  By contrast, not granting a
9    preliminary injunction would have little or no impact on C&D, which waited at least
10   13 months to seek preliminary relief.  C&D describes itself as "one of the leading
11   producers of packaged consumer products in the United States."  (Def.'s Mot. for
12   Prelim. Inj. at 1.)  C&D sells numerous different products under numerous "well
13   known brand names."  (*Id.*)  C&D's revenue in 2007 was approximately $2.2
14   billion.  (Stone Decl. at 32.)  Thus, the balance of hardships in this case
15   overwhelmingly favors Puricle.

16         Moreover, where, as here, a party delays in seeking a preliminary injunction,
17   "[s]uch a tactical delay, in addition to tending to weigh against a finding of
18   irreparable harm to [movant], also provides support that [opposer] would suffer a
19   greater harm by an injunction than [movant] would suffer should the requested
20   injunction be denied."  *Hologic, Inc. v. SenoRx, Inc.*, No. C-08-00133 RMW, 2008
21   U.S. Dist. LEXIS 36693, at *59 (N.D. Cal. Apr. 25, 2008).  By waiting at least 13
22   months to seek a preliminary injunction, C&D allowed the status quo to change,
23   thereby increasing the harm to Puricle if a preliminary injunction is granted.  *See*
24   *Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1092 n.27 (3d Cir. 1984) ("[T]he
25   district court may legitimately think it suspicious that the party who asks to preserve
26   the status quo through interim injunctive relief has allowed the status quo to change
27   through unexplained delay.").

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PRELIMINARY INJUNCTION --
CASE NO. CV 08-03082 ABC (OPx)**

1    C&D argues that because any harm to Puricle is self-imposed and Puricle's
2    actions were willful and egregious, any harm to Puricle need not be considered.
3    (Def.'s Mem. at 11-12.)  C&D misstates the law.  Even if Puricle's conduct could be
4    construed as "willful" or "egregious" or its harm "self-imposed," this is not relevant
5    to the balance of hardships on a motion for preliminary injunction.  Cases cited by
6    C&D do not address the standard on a motion for preliminary injunction, but rather
7    whether under the particular circumstances in those cases a permanent injunction
8    was properly granted or denied after a finding of liability at trial.  *See United States*
9    *v. Marine Shale Processors*, 81 F.3d 1329 (5th Cir. 1996);  *Windsurfing Int'l v.*
10   *AMF, Inc.*, 782 F.2d 995 (Fed. Cir. 1986).

11              **D.    A Preliminary Injunction Would Disserve The Public Interest**

12   A preliminary injunction would stifle competition and thereby harm the
13   public.  *See Davis v. Advanced Care Techs., Inc.*, No. Civ. S-06-2449 RRB DAD,
14   2007 U.S. Dist. LEXIS 57783, at *16 (E.D. Cal. Aug. 7, 2007) ("The settled public
15   policy of California favors open competition . . . .") (citation omitted).  Moreover, a
16   preliminary injunction would allow C&D to continue to appropriate all the goodwill
17   of Puricle's NeverScrub brand and patented product and confuse consumers into
18   believing that C&D's Scrub Free product, which uses nearly identical packaging and
19   which has been promoted to at least one of C&D's customers as being an improved
20   "continuation" of Puricle's patented NeverScrub product (*see* Kreszl Decl. at 58),
21   originated from Puricle.  As C&D notes, prevention of consumer confusion is in the
22   public interest.  (*See* Def.'s Mem. at 13 (citation omitted).)  To prevent consumer
23   confusion, Puricle should be able to notify retailers that C&D is no longer selling
24   Puricle's NeverScrub product, but that the product (with a redesigned packaging that
25   contains no trade dress, trademark, or patented product owned by C&D) is available
26   directly from Puricle.

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PRELIMINARY INJUNCTION --
CASE NO. CV 08-03082 ABC (OPx)**

### E. Even If C&D Were Entitled To A Prohibitory Injunction, It Would Not Be Entitled To A Mandatory Injunction

"A prohibitory injunction preserves the status quo. . . . A mandatory injunction 'goes well beyond simply maintaining the status quo *pendente lite* and is particularly disfavored.' . . . When a mandatory preliminary injunction is requested, the district court should deny such relief 'unless the facts and law clearly favor the moving party.'" *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (citations omitted).

Here, in addition to a prohibitory injunction, C&D seeks a mandatory injunction. Specifically, C&D asks this Court to order Puricle to produce materials to C&D prior to discovery in this case, to direct Wal-Mart to remove any Puricle NeverScrub products from its shelves, and to remove all references to NeverScrub from Puricle's website. If the Court is inclined to grant C&D's request for a preliminary prohibitory injunction, it should deny its request for a preliminary mandatory injunction because, as demonstrated herein, the facts and law in this case do not clearly favor C&D.

## IV. CONCLUSION

For the foregoing reasons, Puricle respectfully requests that the Court deny C&D's Motion for Preliminary Injunction in its entirety.

DATED: July 9, 2008                    MacPHERSON KWOK CHEN & HEID LLP


By _____/s/ Clark S. Stone_____
    CLARK S. STONE
    Attorneys for Plaintiff and Counterclaim
    Defendant
    PURICLE, INCORPORATED